UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUNIE J. DEMPSTER,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,<br><br>    Defendant. | Case No. ED CV 07-503-PJW<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff brings this action, challenging a decision by Defendant Social Security Administration (the "Agency"), denying her application for Supplemental Security Income and Disability Insurance Benefits. She asks the Court to reverse the Agency's decision and award benefits, or, in the alternative, to remand the case for further proceedings. For the reasons discussed below, the Agency's decision is REVERSED and the case is REMANDED for further proceedings.

Plaintiff claims that the Administrative Law Judge ("ALJ") erred when he failed to consider the "testimony" of lay witness Cynthia Johnson, Plaintiff's roommate. (Joint Stip. at 17-19.) Ms. Johnson filled out and submitted a form in which she described various problems Plaintiff had coping with everyday life. (Administrative

Record ("AR") 81-90.)  According to Ms. Johnson, Plaintiff was irresponsible, forgetful, and could not keep commitments because she could not remember or was easily distracted.  (AR 81.)  Ms. Johnson further described Plaintiff as someone who failed to maintain her own hygiene.  (AR 82-83.)  Ms. Johnson believed that Plaintiff exhibited two or more personalities.  (AR 85.)  She also thought that Plaintiff's mental impairments precluded her from understanding and following instructions, completing tasks, and getting along with others.  (AR 87.)

The Agency concedes that the ALJ failed to address this testimony, but argues that the testimony was incompetent and of "dubious" evidentiary value.  (Joint Stip. at 20.)  In Defendant's view, because this evidence was questionable, at best, the ALJ was not required to even discuss it.  (Joint Stip. at 17-20.)

Defendant's argument is not supported by the law or the facts. First, from a legal perspective, testimony from someone in a position to observe a claimant's symptoms and daily activities is "competent evidence."  *See Smith v. Bowen*, 849 F.2d 1222, 1226 (9th Cir. 1988) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)); *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." (citations omitted )).  An ALJ must consider this testimony in determining whether a claimant can work.  *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); 20 C.F.R. § 416.913(d)(4).

1     Second, as to the facts, the government's contention that Ms. Johnson's testimony did not relate to Plaintiff's ability to work is simply wrong. Ms. Johnson's testimony went to the heart of Plaintiff's ability to work, i.e., Plaintiff's ability to remember, concentrate, complete tasks, follow instructions, etc.

6     Defendant argues in the alternative that, even if this testimony was relevant and the ALJ should have considered it, any error was harmless because the testimony was "inconsequential" to the ultimate determination of disability. (Joint Stip. at 22.) Again, the Court disagrees.

11     An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Stout*, 454 F.3d at 1055. In order for it to be inconsequential, the Court must be able to "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1056.

17     The Court cannot so conclude here. Had the ALJ credited Ms. Johnson's testimony, he would have likely concluded that Plaintiff was disabled. For that reason, the ALJ's failure to discuss the testimony is not harmless error. On remand the ALJ should address it.

21     Next, Plaintiff claims that the ALJ erred when he failed to address the Global Assessment of Functioning, or GAF, scores in the medical record. (Joint Stip. at 4.) Somewhat tied to this claim is Plaintiff's third claim, that the ALJ erred when he failed to conclude that Plaintiff's mental impairment was severe. (Joint Stip. at 12-13.) As explained below, these issues, too, should be addressed on remand.

1    GAF scores are a tool used by mental health professionals to
2 quantify in a single measure a patient's overall level of functioning.
3 Diagnostic and Statistical Manual of Mental Disorders, Fourth Ed.,
4 Text Revision ("DSM-IV-TR") at 32.  Plaintiff's mental health
5 providers assessed Plaintiff's GAF during the course of her treatment
6 and consistently reported it in the 50-60 range.  (AR 120, 208-09,
7 216, 224, 226, 228.)  This range corresponds with someone who exhibits
8 "[m]oderate symptoms ... or moderate difficulty in social,
9 occupational, or school functioning ...."  DSM-IV-TR at 34.
10    As a general rule, an ALJ is not required to rely on GAF scores
11 in formulating his decision.  *See Howard v. Comm'r of Social Security*,
12 276 F.3d 235, 241 (6th Cir. 2002).  But, arguably, GAF scores can be
13 probative of a claimant's mental health on a given day and should at
14 least be acknowledged by the ALJ.  *See*, *e.g.*, *Hacker v. Astrue,* 2008
15 WL 4224952, *5 (W.D. Olka. 2008) ("[I]t was error for the
16 administrative law judge to not at least address the GAF scores and
17 explain why they were not relevant.")  This seems particularly true in
18 this case because some of the GAF scores were from Plaintiff's
19 treating psychiatrist William Lawrence.  (AR 216, 224, 226, 228.)  The
20 ALJ failed to mention this doctor and did not discuss the significance
21 of his findings, including the GAF scores.  (AR 13.)  This oversight
22 was compounded by the fact that the consulting examining psychiatrist,
23 who concluded that Plaintiff did not have a severe mental impairment,
24 and who the ALJ relied on in reaching his decision that Plaintiff was
25 not disabled, did not have Dr. Lawrence's records and, therefore, did
26 not consider them in formulating his opinion.  (AR 165.)
27    Were Plaintiff's sole complaint that the ALJ failed to discuss
28 the GAF scores, the Court would not send the matter back to the ALJ

for reconsideration of this issue.  But, because the ALJ also failed to consider the treating psychiatrist's records, which included GAF scores, and, further, because the ALJ will be called upon to address the lay testimony, the Court will remand on this issue as well.  On remand, the ALJ should address the relevance, if any, of the GAF scores, specifically, and Dr. Lawrence's records, generally, in determining whether Plaintiff has a severe mental impairment.  The ALJ need not (but may) address any GAF scores assessed by social workers, (AR 208), as they are not "acceptable medical sources" under the regulations and, thus, are not entitled to deference.  *See* 20 C.F.R. § 416.913(a).

Finally, Plaintiff, who is 5'-6" tall and weighs about 200 pounds, argues that the ALJ erred when he failed to consider the impact of her obesity on her ability to work.  (Joint Stip. at 7-10.)  On this issue, the Court sides with Defendant.  Plaintiff never raised the issue of obesity in her application, the reports she filled out and submitted to the Agency in support of her application, or in her testimony before the ALJ.  (AR 73-80, 93-99, 107-14, 234-59.)  Further, a fair reading of the record suggests that Plaintiff's weight had no impact on her ability to work.  Plaintiff, for example, told the Agency in November 2004 that she walked five hours a day.  (AR 77.)  When asked on the same form to indicate by checking the appropriate box any physical or mental limitations caused by her impairments, Plaintiff did not check any physical limitations, except "talking."  (AR 78.)  Nor did her roommate, Ms. Johnson, when she completed a similar form.  (AR 87.)  A physical examination by a consulting doctor revealed that Plaintiff had no physical impairments.  (AR 153-57.)

If Plaintiff believed that her weight interfered with her ability to work, she should have said so.  She should not expect the ALJ to take it upon himself to tell her at the administrative hearing that he thinks that she is obese and ask her how her obesity impacts her ability to work.  This is particularly true where there is no evidence in the record that her weight interfered with her ability to work; where she never raised the issue; and where she was represented by counsel at the hearing, who also did not raise the issue during the hearing.  *See*, *e.g.*, *Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 511-12 (9th Cir. 1987) (denying request for remand to address impairment overlooked by ALJ even though some evidence of it existed in the record where claimant, represented by counsel, failed to raise impairment in administrative hearing, where impairment "was not significantly at issue at the hearing," and where claimant offered no explanation for his failure to press the claim at or before the hearing).  On remand, if Plaintiff wants to claim that her obesity was a contributing factor to her inability to work, she should say so and give the Agency a chance to address the issue.

For the foregoing reasons, the Court hereby REVERSES the Agency's decision and REMANDS the case for further proceedings consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

DATED:  September 23, 2008.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\DEMPSTER, L 503\Memo and Opinion.wpd